IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TECHNIP OFFSHORE, INC. (as substituted for TECHNIP OFFSHORE CONTRACTORS, INC. f/k/a COFLEXIP STENA OFFSHORE, INC.), | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. H-04-0096 |
| WILLIAMS FIELD SERVICES - GULF COAST COMPANY, L.P. AND WILLIAMS OIL GATHERING, LLC, | ) ) ) ) | |
| Defendants. | ) | |

_____

**DEFENDANTS' FOURTH AMENDED ANSWER AND COUNTERCLAIM**
_____

Defendants, Williams Field Services – Gulf Coast Company, L.P. and Williams Oil Gathering, LLC, subject to their Motion to Dismiss filed herein, respectfully submit this Fourth Amended Answer and Counterclaim and state as follows:

## FOURTH AMENDED ANSWER

### A. Parties

1. Defendants have insufficient information to form a belief as to the truth of the allegations in paragraph 1 of the Fourth Amended Original Complaint.

2. Defendants admit the factual allegations in paragraph 2 of the Fourth Amended Original Complaint.

3. Defendants admit the factual allegations in paragraph 3 of the Fourth Amended Original Complaint.

### B. Jurisdiction

4. Defendants admit that the amount in controversy exceeds $75,000. Defendants have insufficient information to form a belief as to the truth of the remaining jurisdictional allegations of paragraph 4 of the Fourth Amended Original Complaint.

### C. Conditions Precedent

5. Defendants deny the factual allegations in paragraph 5 of the Fourth Amended Original Complaint that all conditions precedent have been performed or have occurred.

### D. Facts

6. Defendants admit the factual allegations in paragraph 6 of the Fourth Amended Original Complaint.

7. Defendants admit the factual allegations in paragraph 7 of the Fourth Amended Original Complaint.

8. Defendants admit the factual allegations in paragraph 8 of the Fourth Amended Original Complaint.

9. Defendants deny the factual allegations in paragraph 9 of the Fourth Amended Original Complaint.

10. Defendants admit the factual allegations in paragraph 10 of the Fourth Amended Original Complaint.

11. Defendants deny the factual allegations in paragraph 11 of the Fourth Amended Original Complaint.

12. Defendants have insufficient information to form a belief as to the truth of the allegations in paragraph 12 of the Fourth Amended Original Complaint.

13. Defendants deny the factual allegations in paragraph 13 of the Fourth Amended Original Complaint.

14. Defendants deny the factual allegations in paragraph 14 of the Fourth Amended Original Complaint.

15. Defendants deny the factual allegations in paragraph 15 of the Fourth Amended Original Complaint.

16. Defendants deny the factual allegations in paragraph 16 of the Fourth Amended Original Complaint.

17. Defendants deny the factual allegations in paragraph 17 of the Fourth Amended Original Complaint.

18. Defendants deny the factual allegations in paragraph 18 of the Fourth Amended Original Complaint.

19. Defendants deny the factual allegations in paragraph 19 of the Fourth Amended Original Complaint.

20. Defendants deny the factual allegations in paragraph 20 of the Fourth Amended Original Complaint.

21. Defendants deny the factual allegations in paragraph 21 of the Fourth Amended Original Complaint.

22. Defendants deny the factual allegations in paragraph 22 of the Fourth Amended Original Complaint.

23. Defendants deny the factual allegations in paragraph 23 of the Fourth Amended Original Complaint.

24. Defendants have insufficient information to form a belief as to the truth of the allegations in paragraph 24 of the Fourth Amended Original Complaint.

25. Defendants deny the factual allegations in paragraph 25 of the Fourth Amended Original Complaint.

26. Defendants deny the factual allegations in paragraph 26 of the Fourth Amended Original Complaint.

27. Defendants deny the factual allegations in paragraph 27 of the Fourth Amended Original Complaint.

28. Defendants deny the factual allegations in paragraph 28 of the Fourth Amended Original Complaint.

29. Defendants deny the factual allegations in paragraph 29 of the Fourth Amended Original Complaint.

30. Defendants deny the factual allegations in paragraph 30 of the Fourth Amended Original Complaint.

31. Defendants deny the factual allegations in paragraph 31 of the Fourth Amended Original Complaint.

32. Defendants deny the factual allegations in paragraph 32 of the Fourth Amended Original Complaint.

33. Defendants deny the factual allegations in paragraph 33 of the Fourth Amended Original Complaint.

34. Defendants deny the factual allegations in paragraph 34 of the Fourth Amended Original Complaint.

35. Defendants deny the factual allegations in paragraph 35 of the Fourth Amended Original Complaint.

36. Defendants deny the factual allegations in paragraph 36 of the Fourth Amended Original Complaint.

37. Defendants deny the factual allegations in paragraph 37 of the Fourth Amended Original Complaint.

38. Defendants deny the factual allegations in paragraph 38 of the Fourth Amended Original Complaint.

39. Defendants deny the factual allegations in paragraph 39 of the Fourth Amended Original Complaint.

40. Defendants deny the factual allegations in paragraph 40 of the Fourth Amended Original Complaint.

41. Defendants deny the factual allegations in paragraph 41 of the Fourth Amended Original Complaint.

42. Defendants deny the factual allegations in paragraph 42 of the Fourth Amended Original Complaint.

43. Defendants deny the factual allegations in paragraph 43 of the Fourth Amended Original Complaint.

44. Defendants deny the factual allegations in paragraph 44 of the Fourth Amended Original Complaint.

45. Defendants deny the factual allegations in paragraph 45 of the Fourth Amended Original Complaint.

46. Defendants deny the factual allegations in paragraph 46 of the Fourth Amended Original Complaint.

47. Defendants deny the factual allegations in paragraph 47 of the Fourth Amended Original Complaint.

48. Defendants deny the factual allegations in paragraph 48 of the Fourth Amended Original Complaint.

### E. Causes of Action

**Count 1: [Intentionally Omitted]**

**Count 2: [Intentionally Omitted]**

**Count 3: [Intentionally Omitted]**

**Count 4: [Intentionally Omitted]**

**Count 5: [Intentionally Omitted]**

**Count 6: [Intentionally Omitted]**

**Count 7: [Intentionally Omitted])**

**Count 8: [Intentionally Omitted]**

**Count 9: [Intentionally Omitted])**

**Count 10: [Intentionally Omitted]**

**Count 11: Breach of Contract (COR 23 Rev. 1 – Extension of BAR and Guarantees)**

49. In answer to paragraph 49 of the Fourth Amended Original Complaint, Defendants incorporate their admissions and denials to paragraphs 1 through 48 of the Fourth Amended Original Complaint.

50. Defendants deny the factual allegations in paragraph 50 of the Fourth Amended Original Complaint.

51. Defendants deny the factual allegations in paragraph 51 of the Fourth Amended Original Complaint.

**Count 12: <u>Breach of Contract (COR No. 24 Rev. 1 – Effect of Re-sequencing Pipelay)</u>**

52. In answer to paragraph 52 of the Fourth Amended Original Complaint, Defendants incorporate their admissions and denials to paragraphs 1 through 48 of the Fourth Amended Original Complaint.

53. Defendants deny the factual allegations in paragraph 53 of the Fourth Amended Original Complaint.

54. Defendants deny the factual allegations in paragraph 54 of the Fourth Amended Original Complaint.

55. Defendants deny the factual allegations in paragraph 55 of the Fourth Amended Original Complaint.

56. Defendants deny the factual allegations in paragraph 56 of the Fourth Amended Original Complaint.

**Count 13: <u>Breach of Contract (COR No. 25 – Effect of Imposition of Exclusion Zone)</u>**

57. In answer to paragraph 57 of the Fourth Amended Original Complaint, Defendants incorporate their admissions and denials to paragraphs 1 through 48 of the Fourth Amended Original Complaint.

58. Defendants deny the factual allegations in paragraph 58 of the Fourth Amended Original Complaint.

59. Defendants deny the factual allegations in paragraph 59 of the Fourth Amended Original Complaint.

60. Defendants deny the factual allegations in paragraph 60 of the Fourth Amended Original Complaint.

### Count 14: Breach of Contract (COR No. 26 – Project Management Costs due to Late Delivery of SPAR

61. In answer to paragraph 61 of the Fourth Amended Original Complaint, Defendants incorporate their admissions and denials to paragraphs 1 through 48 of the Fourth Amended Original Complaint.

62. Defendants deny the factual allegations in paragraph 62 of the Fourth Amended Original Complaint.

63. Defendants deny the factual allegations in paragraph 63 of the Fourth Amended Original Complaint.

### Count 15: Breach of Contract (COR No. 27 – Vessel and Subcontractor Costs due to Late Delivery of SPAR)

64. In answer to paragraph 64 of the Fourth Amended Original Complaint, Defendants incorporate their admissions and denials to paragraphs 1 through 48 of the Fourth Amended Original Complaint.

65. Defendants deny the factual allegations in paragraph 65 of the Fourth Amended Original Complaint.

66. Defendants deny the factual allegations in paragraph 66 of the Fourth Amended Original Complaint.

67. Defendants deny the factual allegations in paragraph 67 of the Fourth Amended Original Complaint.

### Count 16: [Intentionally Omitted]

### Count 17: [Intentionally Omitted]

**Count 18: [Intentionally Omitted]**

**Count 19: [Intentionally Omitted])**

**Count 20: [Intentionally Omitted]**

**Count 21: [Intentionally Omitted]**

**Count 22: [Intentionally Omitted]**

**Count 23: [Intentionally Omitted]**

**Count 24: [Intentionally Omitted]**

**Count 25: [Intentionally Omitted]**

**Count No. 26: <u>Declaratory Judgment Action</u>**

68. In answer to paragraph 68 of the Fourth Amended Original Complaint, Defendants incorporate their admissions and denials to paragraphs 1 through 48 of the Fourth Amended Original Complaint.

69. Defendants deny the factual allegations in paragraph 69 of the Fourth Amended Original Complaint.

70. Defendants deny the factual allegations in paragraph 70 of the Fourth Amended Original Complaint.

71. Defendants deny the factual allegations in paragraph 71 of the Fourth Amended Original Complaint.

**<u>Prayer</u>**

72. Defendants deny that Plaintiff is entitled to the relief requested in paragraph 72(A) – (E) of the Fourth Amended Original Complaint.

**<u>AFFIRMATIVE DEFENSES</u>**

73. Plaintiff has failed to state a claim upon which relief can be granted.

74. Plaintiff has failed to perform all conditions necessary to recover from Defendants in this action.

75. Plaintiff's damages, if any, should be reduced by the amount attributed to Plaintiff's failure to mitigate damages.

76. Plaintiff's claims are barred by the doctrine of estoppel.

77. Plaintiff's claims are barred by the doctrine of waiver.

78. Plaintiff's claims are barred because Plaintiff materially breached the Contract (as defined in the Fourth Amended Original Complaint) prior to any alleged material breach by Defendants.

79. Plaintiff's claims are barred by the affirmative defense of fraudulent inducement. To induce Defendants to enter into the Contract, Plaintiff assured Defendants that it would accept the potential interface costs associated with completing the Contract in concert with other contractors performing work on the project. Kevin Woods' June 25, 2001 letter to Defendants is an example of that inducement. In the letter, which Mr. Wood characterized as "one further push" to win the Contract, Mr. Wood advised Defendants that Plaintiff would agree to accept liability for interface costs. In reliance upon Plaintiff's representations about bearing interface costs associated with the project, Defendants entered into the Contract with Plaintiff. Despite Plaintiff's representations, Plaintiff has refused to bear its interface costs as represented, and as agreed to by Plaintiff in the Contract. Indeed, Plaintiff has sued Defendants to recover the very interface costs that it promised to pay.

80. Under the Contract, Plaintiff assumed the risk of the damages it now alleges and such claims are barred.

81. Plaintiff's claims are barred by the affirmative defense of release.

WHEREFORE, Defendants, Williams Field Services – Gulf Coast Company, L.P. and Williams Oil Gathering, LLC, pray that Plaintiff Technip Offshore, Inc. take nothing and that Defendants be awarded their attorneys' fees and costs.

## DEFENDANTS' COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants file this Counterclaim against Technip Offshore, Inc. (as substituted for Technip Offshore Contractors, Inc. f/k/a Coflexip Stena Offshore, Inc.) ("Technip") and in support state as follows:

## FACTS

82. On August 15, 2001, Williams Field Services – Gulf Coast Company, L.P. and Williams Oil Gathering, L.L.C. (collectively "Williams") entered into a Production Handling Agreement (the "Handling Agreement") with Dominion Exploration and Production and Pioneer Natural Resources USA (collectively, the "Producers") wherein Williams agreed to provide production handling and transportation services for oil and gas produced by the Producers from their lease in the Mississippi Canyon Block 773 in the United States Gulf of Mexico by means of a floating production structure (the "SPAR") and a gas and oil pipeline (the "Export Pipeline(s)") connected to the United States main shoreline. This project was referred to as the "Devils Tower Project" (the "Project").

83. The Project had, generally, two aspects, the construction of the SPAR and the construction of the Export Pipelines.

84. SparTEC, Inc. ("SparTEC") was selected as the contractor to design, build, and install the SPAR.

85. During the early part of 2001, Williams discussed the engineering, procurement, installation, and commissioning services related to the Export Pipelines portion of the Project with several contractors. In this regard, Williams engaged in lengthy discussions with SparTEC,

since the selection of SparTEC would avoid "interface" problems between the SPAR and Export Pipeline portions of the Project. That is, the timing of the completion of various aspects of the SPAR construction and various aspects of the Export Pipeline construction was critical, because portions of the work on both of these portions of the Project could not occur simultaneously.

86. Williams also discussed the Export Pipeline portion of the Project with Technip. During these discussions, Williams expressed concerns regarding the potential for interface problems. Technip, however, assured Williams that it would assume all interface risks between the SPAR and Export Pipeline portions of the Project. In reliance on this representation, Williams began more extensive discussions with Technip in a series of at least five to six meetings held in Tulsa, Oklahoma during the summer of 2001.

87. The culmination of these negotiations was the execution, in Tulsa, Oklahoma, of an Engineering, Procurement, Installation, and Commissioning of Gas Export Pipeline and Oil Export Pipeline contract, effective August 13, 2001, between Williams and Technip (the "EPIC Contract"), by which Technip agreed to design and install, inter alia, the Export Pipelines.

88. A heavily negotiated provision of the EPIC Contract involved the pre-lay of the Export Pipelines and the Steel Cantenary Risers ("SCR(s)") that connect the Export Pipelines to the SPAR. The EPIC Contract unambiguously requires that this "pre-lay" occur before the commencement of the installation of the SPAR (the intent of this provision was to avoid a protracted discussion of change order requests at the conclusion of the Project similar to those that Williams experienced with Technip on a prior project).

89. More specifically, the EPIC Contract required the installation and commissioning of the Export Pipelines and SCRs in three Phases pursuant to Exhibit B of the EPIC Contract. Phase I and Phase II were the pre-lay of the pipelines and SCRs on the ocean floor, which were

to occur prior to the SPAR installation. Phase III followed with the connection of the SCRs and tie-in spools to the SPAR and the commissioning of the system.

90. The completion of Phase I and Phase II prior to the commencement of work on the SPAR installation was a material part of the EPIC Contract, because the failure to complete these phases in accordance with the contractual terms would likely significantly affect the interface between the work to be performed by Technip and the work to be completed on the remaining portions of the Project, particularly the SPAR installation. The Phase I and Phase II work were on the schedule critical path for the Technip portion of the Project, and Technip's Payment Schedule, contained in Exhibit A of the EPIC Contract, showed milestone payments based upon the performance of these pre-lay requirements.

91. The timing of the pre-lay obligation is confirmed in Section 4.7 of Exhibit B where it is stated: "The Devils Tower reeled SCR's will be installed, prior to the arrival of the SPAR . . ." These pre-lay requirements were also on the critical path of the project schedules issued by Technip in the December, 2002 and January, 2003 Monthly Reports, and were scheduled to be accomplished no later than February 28, 2003.

92. Technip made no effort to complete its pre-lay obligations in a timely fashion.

93. As a result, in a meeting on January 15, 2003, and in several later conversations, Williams advised Technip that in mid-March, 2003, another party would be mobilizing to perform work on the SPAR which would restrict Technip's ability to conduct pre-lay activities.

94. After repeated inquiries by Williams as to when the pre-lay activities would begin, on February 27, 2003, Technip advised Williams for the first time that the vessel (the "Vessel") to be used to conduct the pre-lay activities would not be available for pre-lay work until March 20, 2003, at the earliest and that the current schedule of the Vessel did not include

further work on the Project until mid-May 2003. The delay in the availability of the Vessel was caused by delays the Vessel encountered performing work for another customer of Technip and rework associated with SCR weld test failures on the Project.

95. Technip was aware, as a result of the January 15 meeting and other conversations with Williams, that this revised schedule was unacceptable, that it was in violation of the EPIC Contract, that it conflicted with work already scheduled for the SPAR, and meant that the available window for the pre-lay of the Export Pipelines and SCRs could be missed.

96. Technip also was aware that because of its delays, the pre-lay might no longer be feasible, since Technip had failed to reach final acceptance of the SCR weld procedures (which resulted from Technip's failure to schedule procedure tests in a timely fashion).

97. As a result, Williams requested that Technip advise Williams in writing, no later than March 24, 2003, of Technip's plans to fulfill its contractual obligation to pre-lay the SCRs prior to the commencement of the installation of the SPAR.

98. On March 19, 2003, because Technip had failed to provide Williams with assurances that it would begin its pre-lay activities and because it was clear to Williams that Technip was not prepared to pre-lay the Export Pipelines and SCRs as required by the EPIC Contract, Williams issued a NOTICE OF NON-COMPLIANCE to Technip. Notwithstanding this notice, Technip failed to conduct the pre-lay activities.

99. Technip, at all relevant times, had free access to complete the Phase I and Phase II work, but failed to do so.

100. Notwithstanding Technip's failure to perform Phase I and Phase II work in a timely manner, it has asserted claims against Williams via attempted Change Order Requests ("COR(s)") for the following:

| | |
|---|---|
| COR #23, Rev. 1 | General project costs associated with SPAR access availability delay. |
| COR #24, Rev. 1 | Costs to resequence Trips 13 and 14 because of interference with the SPAR installation. |
| COR #25 | Standby costs for Deep Blue vessel delay following Trip 13. |
| COR #26 | Costs for project management and engineering from March 2003 to March 2004. |
| COR #27 | Miscellaneous costs associated with delay to SPAR access availability. |

101. Notwithstanding the fact that Technip's own acts and omissions have given rise to the alleged claims which it seeks to assert against Williams in the referenced CORs, Technip refuses to withdraw them. Further, such claims are barred by the EPIC Contract.

102. For instance, to limit any claims related to interface problem (i.e., the inability of Technip to perform work due to ongoing work on the SPAR), Williams insisted on the language contained in Article 2.6 of the EPIC Contract, which states that the "CONTRACTOR shall bear all of CONTRACTOR interface related costs, if any."

103. Further, under Article 23.5 of the EPIC Contract, Technip was required to achieve Substantial Completion by the later of March 2, 2003, or the SPAR Access Date plus fifty-one (51) days; otherwise, liquidated damages are to be assessed for each day thereafter.

104. Williams insisted on these liquidated damage provisions because timely connection of the SCRs to the SPARs and timely commissioning of the Export Pipelines was crucial to achieving the scheduled first oil production for the Producers, and because Williams had similar liquidated damage provisions in its agreements with the Producers.

105. Substantial Completion did not occur until April 22, 2004.

106. The SPAR Access Date is defined as the date upon which full access to commence the work at the SPAR is available in accordance with Article 2.0. Such access was available no later than January 27, 2004.

107. Instead of obtaining another vessel to complete the lift work on January 27, 2004, as described in Article 2.6 of the EPIC Contract, Technip insisted on using its vessel, Deep Blue, and delayed beginning the lift work until March 22, 2004.

108. Thus, the provisions of Article 23.5 for assessment of liquidated damages were effective as of March 18, 2004.

109. As a result of Technip's failure to comply with the EPIC Contract, as set forth in the foregoing paragraphs, Williams has suffered liquidated damages in an amount to be proven at trial, but believed to exceed Four Million Two Hundred Thousand Dollars ($4,200,000.00).

110. Section 4.8.1 of Exhibit B of the EPIC Contract further states "[Technip] is responsible for all interface management for the activities required on the Spar and the shallow water platform MP-261 in relation to its Work, during the engineering and installation phase of this project.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

111. Williams adopts and realleges the allegations contained in paragraph nos. 82 through 110 of this Counterclaim.

112. This Court has the authority to declare the rights and obligations, or the lack thereof, between Technip and Williams under the EPIC Contract, pursuant to 28 U.S.C. §2201.

113. Because Technip has failed to withdraw the referenced CORs, there exists a genuine dispute as to Technip's and Williams' obligations to pay amounts alleged to be due by Technip under the CORs.

114. Williams is entitled to a declaration that each of the CORs issued by Technip, and which are a part of Technip's claims asserted in its Fourth Amended Original Complaint, are not valid and do not represent amounts due and owing from Williams to Technip.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

115. Williams adopt and realleges the allegations contained in paragraph nos. 82 through 110 of this Counterclaim.

116. Technip's actions, as set forth, herein also amount to a breach of the EPIC Contract as a result of Technip's failure to commence work on the SPAR Access Date of January 27, 2004, and Technip's subsequent failure to complete its work within the contractually agreed deadlines. Therefore, Williams is entitled to liquidated damages of $4.2 million under the EPIC Contract.

## RELIEF REQUESTED

WHEREFORE, Williams respectfully requests that this Court enter judgment in its favor and against Technip as follows:

i) A judicial declaration that Williams is not obligated to pay any amount alleged to be due by Technip as a result of the Change Order Requests numbered 23, 24, 25, 26, and 27 as revised;

ii) Liquidated damages on its claim of breach of the EPIC Contract in an amount of $4.2 million; and

iii) All other and further relief that this Court deems just and proper, including Williams' costs and attorneys' fees incurred as a result of the filing of this lawsuit.

Respectfully submitted,

| | |
|---|---|
| Of Counsel:<br>**HALL, ESTILL, HARDWICK,**<br>**GABLE, GOLDEN & NELSON, P.C.**<br><br>Karissa K. Cottom<br>State Bar No. 24029893<br>Southern District of Texas No. 29593<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma  74103<br>Telephone (918) 594-0400<br>Facsimile (918) 594-0505<br><br>and<br><br>**JONES, WALKER, WAECHTER,**<br>**POITEVENT, CARRERE &**<br>**DENEGRE, L.L.P.**<br>John D. White<br>State Bar No. 21311500<br>Southern District of Texas No. 6579<br>10001 Woodloch Forest Drive, Suite 350<br>The Woodlands, Texas 77380<br>Telephone (281) 296-4444<br>Facsimile (281) 296-4404 | By:  /s/ T. Lane Wilson<br>T. Lane Wilson<br>Oklahoma Bar #16343<br>Southern District of Texas No. 38867<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma  74103<br>Telephone (918) 594-0400<br>Facsimile (918) 594-0505<br><br>**ATTORNEY IN CHARGE FOR**<br>**DEFENDANTS WILLIAMS FIELD**<br>**SERVICES - GULF COAST COMPANY,**<br>**L.P. AND WILLIAMS OIL GATHERING,**<br>**LLC** |

## **CERTIFICATE OF SERVICE**

       I, the undersigned, do hereby certify that on the 24 day of February, 2005, a true and correct copy of the foregoing was sent by U.S. Mail, with proper postage thereon fully paid, return receipt requested, to:

    Kerry C. Williams
    R. Kyle Hawes
    Amanda G. Snowden
    Chamberlain, Hrdlicka, White
         Williams & Martin
    1200 Smith Street, Ste. 1400
    Houston, TX  77002

                                               /s/  T. Lane Wilson

499701.1:912455:00370