IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

Michael N. Milby, Clerk

| | | |
|---|---|---|
| TECHNIP OFFSHORE, INC. (as substituted for TECHNIP OFFSHORE CONTRACTORS, INC. f/k/a COFLEXIP STENA OFFSHORE, INC.) | § § § § | |
| *Plaintiff* | § § | CIVIL ACTION NO. H-04-0096 |
| V. | § § | |
| WILLIAMS FIELD SERVICES—GULF COAST COMPANY, L.P., AND WILLIAMS OIL GATHERING, LLC | § § § § | |
| *Defendants* | § § § § § | |

United States Courts
Southern District of Texas
FILED

FEB 2 4 2005

Michael N. Milby, Clerk

---

## PLAINTIFF'S FOURTH AMENDED ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE ROSENTHAL:**

Plaintiff, TECHNIP OFFSHORE , INC. ("*Technip*") files the following Third Amended

Original Complaint for the Court's review and consideration as follows:

### A. Parties

1.     Plaintiff TECHNIP OFFSHORE, INC. is a corporation organized under the laws

of the State of Delaware, having its principal office at 11700 Old Katy Road, Suite 150, Houston,

Harris County, Texas 77079. Technip acquired by merger Technip Offshore Contractors, Inc.

and has recently substituted into this action as the proper party in interest. Technip Offshore

Contractors, Inc. was formerly known as COFLEXIP STENA OFFSHORE, INC., however, the

name of the company was changed by amendment dated July 30, 2002 and an official notification was filed in the Office of the Texas Secretary of State on August 9, 2002.

2. Defendant WILLIAMS FIELD SERVICES—GULF COAST COMPANY, L.P. is a limited partnership organized under the laws of the State of Delaware, having its principal office at Williams Midstream, WRC3-8, One Williams Center, Tulsa, Oklahoma, 74172 and which may be served with process by serving its designated agent for process, C.T. Corporation System, 811 Dallas Avenue, Houston, Harris County, Texas 77002. Service of this amended pleading can be effectuated by serving its attorney in charge, T. Lane Wilson, Hall Estill, 320 South Boston Avenue, Suite 400, Tulsa Oklahoma, 74103.

3. Defendant, WILLIAMS OIL GATHERING, L.L.C. is a limited liability company organized under the laws of the State of Delaware, having its principal office at Williams Midstream, WRC3-8, One Williams Center, Tulsa, Oklahoma, 74172 and which may be served with process by serving its designated agent for process, C.T. Corporation System, 811 Dallas Avenue, Houston, Harris County, Texas 77002. Service of this amended pleading can be effectuated by serving its attorney in charge, T. Lane Wilson, Hall Estill, 320 South Boston Avenue, Suite 400, Tulsa Oklahoma, 74103.

## B.    Jurisdiction

4. The Court has continuing jurisdiction over the present lawsuit under 28 U.S.C. § 1332(a)(1) because Technip at the time of the filing of this lawsuit was a citizen of a different state than the Defendants and the amount in controversy exceeds $75,000, excluding interest and costs.

## C.    **Conditions Precedent**

5.    All conditions precedent have been performed or have occurred. *See* FED. R. CIV. P. 9(c).

## D.    **Facts**

6.    Technip is an engineering, procurement, fabrication and installation firm that specializes in designing and installing marine structures, platforms, production equipment, pipelines and other hydrocarbon production related equipment offshore. Technip specializes in the installation of offshore pipelines for the transference of hydrocarbons from offshore platforms.

7.    In the spring and summer of 2001, Technip began negotiations for the installation of two (2) pipelines located off the Louisiana coast with WILLIAMS FIELD SERVICES COMPANY acting as agent for Defendants WILLIAMS FIELD SERVICES—GULF COAST COMPANY, L.P. ("*Williams L.P.*") and WILLIAMS OIL GATHERING, L.L.C. ("*Williams LLC*") (collectively Williams LP and Williams, LLC are referred to as "*Defendants*").

8.    Dominion Exploration and Production, Inc. and Pioneer Natural Resources USA, Inc. were the developers of an offshore prospect located in Mississippi Canyon Block 773 offshore in the Gulf of Mexico ("*MC 773*"). The name of the prospect was referred to as the "*Devil's Tower Development Project.*"

9.    The Devils Tower Development Project required the installation of a floating production system known as "SPAR" in approximately 5,700 feet of water and the construction of two (2) 18"Ø export pipelines totaling 155 miles of pipeline. One pipeline was an 18"Ø oil pipeline and the other was an 18"Ø gas pipeline. Technip was asked to bid on the design and installation of the two (2) pipelines in the Devils Tower Development Project. The 18"Ø export

pipelines were to be tied into the Devils Tower SPAR by 14"Ø branch lines, each 6 miles long, culminating in steel catenary risers ("*SCR*"), pulled into the SPAR by a winch installed on the platform.

10.     Technip submitted a bid to Defendants to complete the installation of the pipelines including all design, procurement, fabrication, installation and pre-commissioning activities.

11.     Technip's bid was accepted by Defendants and the parties entered into an engineering, procurement, installation and construction Contract dated August 13, 2001 (the "*Contract*"). The Contract was entered into by Technip, formerly known as Coflexip Stena Offshore, Inc. as well as Defendants. *See* Contract attached hereto as Exhibit A and incorporated herein by reference.

12.     After entering into the Contract, Technip began to mobilize its project management and engineering personnel, equipment and manpower for the design and installation of the two (2) export pipelines and channeled its corporate resources to satisfy and meet the terms of the Contract.

13.     In order to assist in the planning and mobilization, Technip and Defendants agreed to a countdown mechanism of diminishing window notifications culminating in determination of the SPAR Access Date ("*SAD*") for Technip to mobilize its installation equipment to complete the SCR installation and pre-commission the pipelines at the SPAR. *See* Exhibit A, Contract, Article 2. The purpose of the diminishing window notification mechanism was to provide Technip and its subcontractors sufficient notice to plan, coordinate, and mobilize its installation vessel *Deep Blue*, together with multiple subcontractor resources in a timely manner to avoid delay costs. The Contract defined the SPAR Access Date ("*SAD*") as

the date upon which Technip would be provided full access and Defendant provided services and equipment necessary to commence work at the SPAR in accordance with the requirements of Article 2.0 of the Contract. *See* Exhibit A, Contract, Article 1, Definitions and Article 2.5.

14.     As of August 13, 2001, the contractually agreed window within which the SAD was to be set was between November 15, 2002 and March 15, 2003. *See* Exhibit A, Contract, Article 2.4(a). Technip was scheduled to complete the pipeline installation procedures following notification of a SAD based on the contractual count down mechanisms in the Contract. Likewise, Defendants were to adhere to the SAD countdown procedures providing Technip with advance notification of, and finally culminating in Defendants establishing a SAD.

15.     The countdown mechanism established by the terms of the Contract was followed by Defendants until August 14, 2002, when Defendants provided to Technip notification of the 45 day window being from January 30, 2003 to March 15, 2003. *See* Exhibit A, Contract, Article 2.4(c). Thereafter, Defendants failed to comply with the terms of the Contract and more specifically the count down notification provisions of Article 2 of the Contract.

16.     Under the terms of the Contract, on October 25, 2002, the next notification became due by Defendants. *See* Exhibit A, Contract, Article 2.4(d). Rather than provide the next window for SAD, Defendants notified Technip that SAD would be delayed and would definitely be later than March 15, 2003.

17.     On November 26, 2002, after Defendants failed to provide notification for more than one month. Technip notified Defendants in writing that the Contract had been breached due to Defendants failure to provide the notification dates as required by the terms of the Contract.

18. On December 10, 2002, Defendants issued a June 18, to September 18, 2003 access window "*for information only*." Nothing in the Contract allows for the issuance of a "*for information only*" window notification.

19. On January 15, 2003, Defendants stated in a monthly Project Review Meeting, that Hull installation was currently indicating earliest Technip access as mid-May 2003, but that the Topsides would not be installed, at the earliest, until late July 2003.

20. On April 8, 2003, Defendants issued a September 13, 2003 to December 12, 2003 SAD window "*for information only*." Nothing in the Contract allows Defendants to issue SAD windows on a "*for information only*" basis.

21. On December 15, 2003, Defendant requested that Technip schedule the *Deep Blue* for the third week in January 2003, if possible as the primary SAD, stating that if this cannot be met, then as a backup time available as soon thereafter as possible in the middle of February.

22. On December 17, 2003, Technip responded stating that the Contract does not permit Defendants to set a SAD outside the contractual window, and considers Defendants to be in material breach of the Contract. Further, Technip stated that it was willing to work with Defendants to reach a mutually acceptable agreement on SAD, however, relying on the countdown mechanism contained in the Contract, and requesting Defendants to honor their undertaking to provide Technip with the contractually required notification.

23. On December 31, 2003, Defendants, ignoring the Contract provisions, unilaterally set a SAD of January 22, 2004, and advised Technip that if it did not receive a response by the end of the day on January 5, 2004, it would seek alternate vessels to perform the SCR pull-in work, charging Technip for the cost thereof up to $275,000 per day.

24. Prior to the time when Technip became aware of the delay problems, it had undertaken 7 mobilizations to support the Devils Tower Development Project and installed 65 miles of 18"Ø gas export line and 26 miles of 18"Ø oil export line. During mobilizations numbers 8 through 12, which occurred prior to November 2002, Technip installed an additional 24 miles of gas export line and 30 miles of oil export line. This work was completed prior to Technip informing Defendants of their material breach of the Contract. By November 2002, all pipes had been delivered, coated and made available for stalk fabrication for the Devils Tower Development Project.

25. Because of the delays created by Defendants and due to their material breach of the Contract with respect to the SAD notification procedures, Technip incurred damages. When it became apparent that Defendants were behind schedule, Technip mitigated its damages by sending its offshore installation crews and equipment to other projects including the NaKika project.

26. Despite the material breach of the Contract by Defendants, Technip continued to honor its contractual obligations. By March 2003, Technip completed its weld fatigue trials on the SCR weld procedure which passed inspection and compliance with the design specifications.

27. On January 15, 2003, Defendants reported to Technip that the SPAR hull installation schedule had an estimated completion by the middle of May 2003. In light of these representations, Technip confirmed to Defendants that it would make 2 additional offshore mobilizations (*i.e.* mobilizations 13 and 14) to be completed in June 2003 and Technip began its mobilization.

28. On June 18, 2003, Defendants informed Technip that despite their earlier estimates, the Hull installation would not be completed by July 6, 2003. As a result, Technip

incurred substantial additional costs as a result of these further delays. On June 23, 2003, Technip informed Defendants that additional costs for schedule disruption were compensable under the Contract. *See* Exhibit A, Contract, Article 8.4. Technip also offered to install the 18"Ø export lines first and then the 14"Ø branch lines and SCR's subject to clear access being made available. On June 25, 2003, Defendants informed Technip that this was agreeable.

29.     On June 26, 2003, Technip rearranged mobilizations 13 and 14 to delay the 14"Ø branch pipe lay work until after July 16, 2003. Technip elected to complete additional work on the NaKika project to further mitigate costs and damages caused by the Defendants.

30.     Between July 12, 2003 and July 22, 2003, mobilization 14 was completed and all 18"Ø pipe was installed in the Devils Tower Development Project. Mobilization 13 was postponed and all 14"Ø pipe was left at Technip's onshore spool base.

31.     On July 18, 2003, Defendants for the very first time advised Technip of a 6 mile exclusion zone around the SPAR location during the hull installation. Technip had never been previously informed of this 6 mile exclusion zone which created problems for Technip due to the fact that its installation vessel was already working 4.5 miles from the SPAR location at the time of the notification. Technip sent notification and requested confirmation from the Defendants of the 6 mile exclusion zone as their vessel and work crews were within the 6 mile zone.

32.     On July 22, 2003, Technip informed Defendants that mobilization 13 would be postponed to mitigate costs as no 14"Ø branch pipe could be laid with the current restriction in place, (*i.e.* the 6 mile exclusion zone). Between July 22 to July 25, 2003, Technip's vessel and crew waited on standby prior to being able to mitigate its damages by redirecting the vessel to other customer's work. Additionally, Technip suggested and offered to Defendants that the 6

mile exclusion zone be reduced to a 3 mile radius in order to allow work to continue. Defendants refused this request.

33.     As a result of the material breaches by the Defendants and the delays caused by the Defendants, Technip began to issue change order requests as required under the terms of the Contract. *See* Exhibit A, Article 3.0 entitled Changes in Work

34.     On June 18, 2003, Technip issued Change Order Request No. 23, which specifically addressed the delay damages caused by the material breach of the Contract related to Project prolongation. The Defendants rejected this change order on July 9, 2003, other than for costs related to Contract Article 2.6. However, no change order was issued.

35.     On August 20, 2003, Technip issued Change Order Request No. 25 which specifically addressed the standby costs associated with the unilateral imposition by Defendants of a 6 mile exclusion zone surrounding SPAR. Technip had completed the installation of the 18"Ø pipelines by this point in time, and Technip had its installation vessel, the *Deep Blue*, ready to perform the 14"Ø branch pipe lay work as of July 22, 2003. However, Technip was unable to start spooling the 14"Ø branch pipe due to the fact that 3 days prior to this work, Defendants had instructed Technip not to enter the 6 mile exclusion zone around the SPAR center location. Defendants' instruction prevented Technip from installing any of the 14"Ø pipe. Furthermore, Defendants refused to diminish or reduce the 6 mile exclusion zone to a 3 mile exclusion zone to keep work continuing. Technip mitigated its damages as much as possible and postponed mobilization 13. Technip, in an effort to further mitigate its damages, mobilized its installation vessels for the NaKika project. However, despite the best efforts of Technip, a 73 hour period of delay occurred, which caused substantial damages to Technip.

36.     The *Deep Blue* was unable to complete any work on mobilization 13 due to the directions of the Defendants to remain outside the 6 mile exclusion zone around the SPAR worksite.   This directive by Defendants, led to the postponement of mobilization 13 and substantial down time for Technip.  The total standby time of 73 hours occurred during the week of July 21, 2003.  Based on $10,000 per hour, the total standby time was $730,000.

37.     As a result of the delays caused by the Defendants, Technip issued a change order request in accordance with the terms of the Contract. On August 29, 2003, without any explanation, a representative of Defendants, Tim Oberlender, issued a written notification to Technip informing that Defendants has rejected the Change Order Request No. 25.

38.     On August 27, 2003, Technip issued Change Order Request No. 24 ("*COR No. 24*") to Defendants through their designated representative. COR No. 24 was issued as a result of the costs associated with the re-arrangement of mobilizations 13 and 14, the postponement of mobilization 13 and the damages that were incurred by Technip. As previously described, Technip had been informed that the SPAR hull installation was delayed, and would be installed in April/May 2003, significantly in advance of the SPAR Topsides. Technip, after being informed of these dates, began to mobilize equipment and manpower to complete the installation of mobilizations 13 and 14 starting in June including the pre-lay of the SCR's.

39.     Due to the delays with the SPAR Hull installation and the Defendants informing Technip of a completion date of July 6, 2003, Technip delayed the start of work by completing an additional vessel mobilization to another project and revised the planned installation sequence to accommodate the Defendants.

40. The SPAR hull installation was delayed further by Defendants and Technip elected to install only part of mobilization 13 in order to get the 14"Ø structures, branch lines and SCR's onto the seabed in order to mitigate its damages.

41. Three days prior to the start of spooling operations for mobilization 13, Technip was notified by Defendants that they were to maintain a 6 mile radius exclusion zone around the SPAR center location. This directive by Defendants resulted in the whole installation of the 14"Ø pipe lay having to be postponed. Technip had to place the *Deep Blue* on stand-by for 3 days while substantial alternative work could be found to keep the *Deep Blue* working. Technip had to demobilize all personnel and equipment because of this disruption.

42. Pursuant to the Contract "...*[a]ny other act or omission by any member of the Defendant's Group which causes Technip actual delay...*" entitles Technip to delay damages associated with the delay. *See* Exhibit A, Contract, Article 8.4.4 and also Article 9.1, Definitions of the parties included in Defendants' Group. In this case, Technip was prevented from performing the installation of the gas flow lines and the SCR's on the seabed as detailed in the Design Basis and Scope of Work of the Contract. *See* Exhibit A, Contract, Exhibit B, Scope of Work.

43. As a result of the imposition of the 6 mile exclusion zone, Technip incurred substantial damages including additional project and management costs, additional transportation costs, spool base costs, vessel costs for the usage of *Deep Blue*, third party equipment costs, survey costs, jumper costs, fabrication costs. The estimated damages to Technip occasioned by this incident are $2,385,991.05.

44. Technip issued Change Order Request No. 24 to recoup these substantial costs which were occasioned by Defendants interference and imposition of a 6 mile exclusion zone

around the SPAR. On August 29, 2003, without any explanation, Defendants' representative, Tim Oberlender issued a rejection of COR No. 24.

45.    As a result of the failure to utilize the diminishing window notification for the SAD and the prolongation of the contractual obligations, Technip issued Change Order Request No. Revised 23 ("COR Rev. 23"), Change Order Request No. 26 ("COR No. 26"), and Change Order Request 27 ("COR No. 27") on December 22, 2003. Technip issued these 3 change order requests to recognize that a significant change of scope which would be required for a revised schedule for SAD which would have to be placed into effect. The Contract specifies a SAD date between November 15, 2002 and March 15, 2003 which has elapsed with no new dates in effect. See Exhibit A, Contract, Article 2.4. The Contract mandates that if either party becomes aware of a change in the Work that it will issue the other a Change Order to the Contract to recognize that there has been a departure from the original scope as detailed under clauses 3.2.1 and 3.2.2 of the Contract. See Exhibit A, Contract, Article 3.2.1 and Article 3.2.2.

46.    As no change orders have been issued by Defendants and the Contract has been materially breached, Technip exercised its rights under the Contract to seek delay damages. See Exhibit A, Contract, Article 8.4. Because of the material breach of the Contract regarding the SPAR Access Date, Technip has incurred significant damages for additional project management and engineering, payment delays, bonds and guarantees, subcontractor obligations, insurance costs, vessel costs, and all costs associated with the delays. Technip has issued Change Order Requests to reflect the additional costs associated with the delay damages which are reflected in COR No. 27 in the amount of $1,414,669.48; (previously included in COR No. 23); COR No. 26 in the amount of $ 2,279,376, (previously included in COR No. 23); and COR 23 Rev. 1 in the amount of $1,828,870.57. Defendants previously denied COR No. 23 on July 9, 2003 quoting

Contract Articles 2.6 and 2.7, however, COR Rev. No. 23 was re-submitted by Technip on December 22, 2003 along with COR Nos. 26 and 27, and updates of two other Change Order Requests. This re-submission was necessary to update the previously submitted COR No. 23 to cover damages assessed through March 15, 2004.

47.     Defendants have made no efforts to resolve the various material breaches of the Contract and have failed to establish any revised timelines or schedules. Defendants have further failed to issue any change orders although the Contract requires them to do so in instances where it is contemplated. Furthermore, Defendants expect Technip to comply with the terms of the Contract although the Defendants themselves have failed to comply with the terms of the Contract.

48.     Technip has invoked the dispute resolution procedure with Defendants by issuing the Change Order Requests which have all been rejected. Technip has also participated in a meeting with Defendants on October 15, 2003 and presented the various material breaches of the Contract by Defendants and Technip's claims for damages. However, the Defendants have on December 17, 2003 rejected Technip's claims. The Contract provides for the arbitration of disputes between the parties of less than $3,000,000 and litigation of disputes greater than $3,000,000.

### E. Causes of Action

**Count 1: [Intentionally Omitted]**

**Count 2: [Intentionally Omitted]**

**Count 3: [Intentionally Omitted]**

**Count 4: [Intentionally Omitted]**

**Count 5: [Intentionally Omitted]**.

**Count 6: [Intentionally Omitted]**

**Count 7: [Intentionally Omitted]**

**Count 8: [Intentionally Omitted]**

**Count 9: [Intentionally Omitted]**

**Count 10: [Intentionally Omitted]**

## Count 11. Breach of Contract (*COR 23 Rev. 1 – Extension of BAR and Guarantees*)

49. Technip incorporates by reference the factual allegations recited in Allegations 1 through 48 herein.

50. Defendants breached a material term of the Contract by failing to comply with the diminishing window notification mechanism for establishing the SAD in accordance with Article 2 of the Contract. Furthermore, the Contract does not allow the SAD to change beyond March 15, 2003 without the consent of both parties. Defendants wholly failed to meet the terms of the Contract and have frustrated Technip's ability to perform the Contract in this instance causing damages to Technip.

51. As a result, Technip initially issued COR No. 23 on June 18, 2003, re-submitted as Rev. 1 on December 22, 2003 to Defendants in the amount of $1,828,870.57. This particular change order request reflects the extra costs associated with the provision of an extended Builder's All Risk Policy and bonds and guarantees associated with the late delivery of the SPAR. However, Defendants have rejected this change order request and Technip has been damaged in the amount of $1,828,870.57 for the wrongful refusal to honor COR 23 Rev. 1.

**Count 12:  Breach of Contract (*COR No. 24 Rev. 1 – Effect of Re-sequencing Pipelay*)**

52.   Technip incorporates the factual recitation recited in Allegations 1 through 48 above.

53.   Technip properly prepared and forwarded COR No. 24 Rev. 1 to the attention of the Defendants to recoup the additional costs associated with the delay damages caused by Technip's re-sequencing of pipe lay mobilizations 13 and 14 and total postponement of mobilization 13. These changes to the work sequence were a direct result of the offshore site obstruction to work caused by the SPAR Hull installation vessel DB-50 and Technip's attempt to avoid scheduling conflicts altogether.

54.   This delay occurred due to Defendants inability to accurately schedule the Hull installation activities and the anticipated DB-50 work schedule. COR No. 24 Rev.1 was previously submitted prior to the completion of mobilization 13 which was postponed until November 2003. COR No. 24 was originally submitted on August 27, 2003, and re-submitted as Rev. 1 on December 22, 2003 based on actual costs incurred, and the total delay damages incurred for COR No. 24 Rev. 1 are $2,385,991.05.

55.   Clause 8.4.4 of the Contract provides that any act by a member of the Defendant Group that causes actual delay to Technip shall be the basis for Technip to recover its damages. In this case, McDermott (a defined member of the Defendant' Group) prevented Technip from commencing installation of the 14"Ø oil and gas branch lines as well as the pre-lay of the SCR's on the seabed.

56.   The Contract states that if Technip desires to make a change in the work, or if Technip believes any instruction by Defendants constitutes a change to the Work, Technip shall so notify Defendants and such notice shall contain Technip's proposal for the change in the

Work. If Defendants unreasonably reject Technip's proposed change, then Article 24 shall be used to resolve the disagreement. *See* Exhibit A, Contract, Article 3.2.2 and Article 24. In accordance with the Contract, Technip issued Change Order notices and proposals, which were wrongfully refused and unreasonably rejected by Defendants. Defendants further refused to implement the escrow provisions of Article 8.3.4 (Extra Work Disputes), all of which constitute material breaches of the Contract by Defendants.

**Count 13: <u>Breach of Contract (*COR No. 25 – Effect of Imposition of Exclusion Zone*)</u>**

57. Technip incorporates the factual recitation recited in Allegations 1 through 48 referenced above.

58. Technip properly prepared and forwarded COR No. 25 on August 26, 2003, to the attention of the Defendants to recoup the additional costs associated with the delay damages caused by Defendants' imposition of a 6 mile exclusion zone surrounding the radius of the SPAR. Technip incurred substantial damages by engaging the *Deep Blue* to stand ready to complete the spooling of the 14"Ø pipeline. Technip belatedly received notification from Defendants of the 6 mile exclusion and had to demobilize equipment including the demobilization of the *Deep Blue*.

59. As a result, the *Deep Blue* could not be redirected and 73 hours of standby costs were incurred by Technip. The standby costs accrued the rate of $10,000 per hour resulting in damages of $730,000. Due to the Defendants failure to comply with the contractual documents to inform of the Change of Scope of Work, Technip incurred substantial damages for engaging and demobilizing the *Deep Blue*. When Technip attempted to recoup these costs from Defendants, they wrongfully rejected COR No. 25.

60. The Contract provides for damages for delays caused by the Defendants. *See* Exhibit A, Contract, Article 8.4. Defendants have failed to reimburse Technip although required to do so under the Contract.

**Count 14. Breach of Contract (*COR No. 26 – Project Management Costs due to Late Delivery of SPAR*)**

61. Technip incorporates by reference the factual allegations recited in Allegations 1 through 48 herein.

62. Defendants breached a material term of the Contract by failing to comply with the mechanism for establishing the SAD in accordance with Article 2 of the Contract. Furthermore, the Contract does not allow the SAD to change beyond March 15, 2003. Defendants wholly failed to meet the terms of the Contract and have frustrated Technip's ability to perform the Contract causing damages to Technip.

63. As a result, Technip issued COR No. 26 on December 22, 2003 to Defendants in the amount of $2,279,376. This particular change order reflects the delay damages associated with the project management and engineering costs associated with the late delivery of the SPAR. COR No. 26 was originally issued to Defendants on June 18, 2003 as part of COR No. 23, but the project management and engineering costs were broken out and updated to cover the delay through March 15, 2004, and resubmitted as COR No. 26 on December 22, 2003. However, it has been rejected and Technip has been damaged in the amount of $2,279,376.00 for the wrongful refusal of Defendants to honor COR No. 26.

**Count 15. Breach of Contract (*COR No. 27 – Vessel and Subcontractor Costs due to late Delivery of SPAR*)**

64.    Technip incorporates by reference the factual allegations recited in Allegations 1 through 48 herein.

65.    Defendants breached a material term of the Contract by failing to comply with the mechanism for establishing SAD in accordance with Article 2 of the Contract. Furthermore, the Contract does not allow the SAD to move beyond March 15, 2003. Defendants wholly failed to meet the terms of the Contract and have frustrated Technip's ability to perform the Contract in this instance causing damages to Technip.

66.    As a result, Technip issued COR No. 27 on December 22, 2003 to Defendants in the amount of $1,414,669.48. COR No. 27 reflects the delay damages associated with the additional costs associated with the late delivery of the SPAR for the retainage of the vessel *Deep Blue*. COR No. 27 also reflects additional costs associated with subcontractors for costs in connection with early commitment to the SCR and lateral pull in winch as well as costs for storage of pipe and survey vessel costs for the 2004 calendar year.

67.    COR No. 27 was originally issued to Defendants on June 18, 2003 as part of COR No. 23, but the costs were broken out and updated to cover the delay through March 15, 2004, and resubmitted as COR No. 27 on December 22, 2003. However, it has been rejected and Technip has been damaged in the amount of $1,414,669.48 for the wrongful refusal of Defendants to honor COR No. 27.

**Count 16:  [Intentionally Omitted]**

**Count 17:  [Intentionally Omitted]**

**Count 18:  [Intentionally Omitted]**

**Count 19:  [Intentionally Omitted]**

**Count 20:  [Intentionally Omitted]**

**Count 21:  [Intentionally Omitted]**

**Count 22:  [Intentionally Omitted]**

**Count 23:  [Intentionally Omitted]**

**Count 24:  [Intentionally Omitted]**

**Count 25:  [Intentionally Omitted]**

### Count 26:  Declaratory Judgment Action

68.     Technip incorporates by reference the factual allegations recited in Allegations 1 through 48 herein.

69.     Based upon the various actions detailed in paragraphs 1 through 48 recited herein, Technip further seeks relief pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001, *et seq.* (Vernons 2000) in relation to the Contract at issue in this litigation.  The Contract at issue in this litigation calls for the application of Texas substantive law for interpretation and construction.  See Exhibit A, Contract, Article 21.0.  The Texas Civil Practice and Remedies Code is considered substantive as opposed to procedural law and therefore the Texas Uniform Declaratory Judgment Act is properly applied for the interpretation and construction of the subject Contract.

70.     A person interested under a deed, will, written contract or other writing constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising of an instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status, or other legal relations thereunder.  *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a).  In this particular instance, Technip requests that the Court enter a declaratory judgment pursuant to Chapter 37 concerning Technip's rights, duties and obligations under the

Contract dated August 13, 2001. On January 8, 2004, Defendants asserted in writing that they may unilaterally designate the SPAR access date in accordance with Article 2 of the Contract. Furthermore, Defendants allege in written correspondence dated January 8, 2004 that they are entitled to liquidated damages pursuant to Article 23.5 of the Contract. Defendants also suggest the imposition of a January 22, 2004 SPAR access date, although the contract requires a mutual agreement from both parties on the designation of the SPAR access date. Thus, Technip seeks various judicial declarations under the contract including but not limited to the following:

a) a judicial declaration that the SPAR access date cannot be unilaterally set without an agreement of the parties;

b) a judicial declaration that Article 23.5 is inapplicable to the case at bar and that Technip is not liable under same;

c) a judicial declaration that a SPAR access date must be mutually agreed upon by the parties under the Contract;

d) a judicial declaration that the contractually established SPAR Access Date has expired under the Contract;

e) a judicial declaration that Technip is entitled to Compensation under the various provisions of Article 8.0 entitled "*Compensation to Contractor*" including delay damages and extra work damages; and

f) a judicial declaration that Technip is not in violation or breach of its obligations and duties under the Contract.

71.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009, Technip requests the Court award it costs, interest at the applicable rate of interest and reasonable and necessary attorneys' fees as are equitable and just to seek a judicial declaration pursuant to the Contract.

## Prayer

72.     For these reasons, Technip Offshore Contractors, Inc. asks for judgment against Defendants WILLIAMS FIELD SERVICES—GULF COAST COMPANY, L.P. and WILLIAMS OIL GATHERING, L.L.C, jointly and severally, for the following:

(A)     Counts 1 through 17

        Count 1     [Intentionally Omitted]

        Count 2     [Intentionally Omitted]

        Count 3     [Intentionally Omitted]

        Count 4     [Intentionally Omitted]

        Count 5     [Intentionally Omitted]

        Count 6     [Intentionally Omitted]

        Count 7     [Intentionally Omitted]

        Count 8     [Intentionally Omitted]

        Count 9     [Intentionally Omitted]

        Count 10    [Intentionally Omitted]

        Count 11    Damages associated with the Breach of Contract which resulted in the issuance of COR No. 23 (Rev. 1) in the principal sum of $1,828,870.57;

        Count 12    Damages associated with the Breach of Contract which resulted in the issuance of COR No. 24 (Rev. 1) in the principal sum of $2,385,991.05;

        Count 13    Damages associated with the Breach of Contract which resulted in the issuance of COR No. 25 in the principal sum of $730,000;

        Count 14    Damages associated with the Breach of Contract which resulted in the issuance of COR No. 26 in the principal sum of $2,279,376;

        Count 15    Damages associated with the Breach of Contract which resulted in the issuance of COR No. 27 in the principal sum of $1,414,669.48;

        Count 16    [Intentionally Omitted]

        Count 17    [Intentionally Omitted]

        Count 18    [Intentionally Omitted]

        Count 19    [Intentionally Omitted]

        Count 20    [Intentionally Omitted]

Count 21    [Intentionally Omitted]

Count 22    [Intentionally Omitted]

Count 23    [Intentionally Omitted]

Count 24    [Intentionally Omitted]

Count 25    [Intentionally Omitted]

(B)    A Declaratory Judgment concerning Technip's Rights, Duties and Obligations under the August 13, 2001 Contract;

(C)    Reasonable attorneys' fees and interest at the appropriate rate of interest;

(D)    Costs of court; and

(E)    All other relief the Court deems appropriate.

Respectfully submitted,

By: _____
          Kerry C. Williams
          Attorney-in-Charge
          State Bar No. 00792968
          Southern District of Texas No. 12564
          1200 Smith Street, Suite 1400
          Houston, Texas 77002
          Telephone: (713) 658-1818
          Telecopier: (713) 658-2553

**ATTORNEYS FOR PLAINTIFF TECHNIP OFFSHORE, INC.**

OF COUNSEL:
CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & MARTIN
R. Kyle Hawes
State Bar No. 00796725
Southern District of Texas No. 23218
Amanda G. Snowden
State Bar No. 24033212
Southern District of Texas No. 31817
1200 Smith, Suite 1400
Houston, Texas 77002
Telephone: (713) 658-1818
Telecopier: (713) 658-2553

## CERTIFICATE OF SERVICE

I certify that on __1/24__ , 2005 a copy of Plaintiff's Fourth Amended Original Complaint was served upon all interested parties by certified mail, return receipt requested addressed as follows:

John D. White
Jones, Walker, Waechter, Poitevant, Carrere & Denegre, LLP
10001 Woodloch Forest Drive, Suite 350
The Woodlands, Texas 77380
**CMRRR 7160 3901 9848 3731 3865**

T. Lane Wilson
Karissa K. Cottom
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
320 South Boston Avenue, Suite 400
Tulsa, Oklahoma 74103-3708
**CMRRR 7160 3901 9848 3731 3872**

_____
Kerry C. Williams