## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

**Technip Offshore, Inc. (As Substituted For
Technip Offshore Contractors, Inc.,
F/K/A CoFlexip Stena Offshore, Inc.),**
                                                                **Plaintiff**

**v.**

**Williams Field Services-Gulf Coast Company, L.P.
and Williams Oil Gathering, LLC,**
                                                        **Defendants.**

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Of Counsel:
HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.
Karissa K. Cottom
State Bar No. 24029893
Southern District of Texas No. 29593

and
JONES, WALKER, WAECHTER
POITEVENT, CARRERE
& DENEGRE, L.L.P.
John D. White
State Bar No. 21311500
Southern District of Texas No. 6579
Catherine V. Funkhouser
State Bar No. 24037307
Southern District of Texas No. 38779
10001 Woodloch Forest Drive, Suite 350
The Woodlands, Texas 77380
Telephone (281) 296-4444
Facsimile (281) 296-4404

T. Lane Wilson
Southern District of Texas No. 38867
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, OK 74103-3708
Telephone (918) 594-0400
Facsimile (918) 594-0505

**ATTORNEY IN CHARGE FOR
DEFENDANTS WILLIAMS FIELD
SERVICES - GULF COAST COMPANY,
L.P. AND WILLIAMS OIL GATHERING,
LLC**

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II. STATEMENT OF THE ISSUES........................................................................................ 2

III. ARGUMENT AND AUTHORITIES................................................................................. 2

    A. The Affidavit of Guy Suffridge is Proper Summary Judgment Evidence ............ 2

    B. Williams Objects to Technip's Expert Report as Summary Judgment
        Evidence.................................................................................................................... 4

    C. Williams Complied With Article 2.4, and Article 2.4 Is Not a Condition
        Precedent to the Recovery of Liquidated Damages Under Article 23.5.1............ 6

    D. Williams Properly Set the SPAR Access Date Pursuant to the Contract ............. 7

    E. Williams is not Precluded from Recovering Damages Simply Because
        Technip Alleges it Breached the Contract ............................................................ 11

    F. Technip Has Waived the Argument that the Liquidated Damages
        Provision in the Contract is an Unenforceable Penalty ...................................... 13

    G. Technip is Not Entitled to Additional Time To Conduct Discovery As To
        The Enforceability Of Article 23.5.1, Because There Are No Factual
        Issues And Technip Has Waived Any Such Request .......................................... 13

    H. Williams has Established as a Matter of Law that it is Entitled to $4
        Million in Liquidated Damages ........................................................................... 15

IV. CONCLUSION.............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093 (5th Cir. 1995) ........................................................ 4

Castle Texas Production Ltd. Partnership v. Long Trusts, 134 S.W.3d 267 (Tex. App.—Tyler 2003, pet. denied) ................................................................................ 12

Den Norske Stats Oljeselskap, A.S. v. Hydrocarbon Processing, Inc., 992 F. Supp. 913 (S.D. Tex. 1998) .................................................................................................... 13

Fowle v. C & C Cola, 868 F.2d 59 (3d Cir. 1989) ........................................................................ 4

Funding Systems Leasing Corp. v. Pugh, 530 F.2d 91 (5th Cir. 1976) ...................................... 13

Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978) .................................................. 3

Gupta v. Eastern Idaho Tumor Inst., Inc., 140 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ................................................................................ 12

Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1 (Tex. 1976) ......................... 7

Lenape Resources Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565 (Tex. 1996) ......................................................................................................................... 5

Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195 (Tex. 2004) .............................. 12

Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507 (5th Cir. 2001) ......................... 4

Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir. 1983) ........................................................ 5

Pace Communications, Inc. v. Moonlight Design, Inc., 31 F.3d 587 (7th Cir. 1994) ........................................................................................................................ 13

Phillips v. Phillips, 820 S.W.2d 785 (Tex. 1991) ....................................................................... 13

Tenneco Inc. v. Enterprise Products Co., 925 S.W.2d 640 (Tex. 1996) ...................................... 9

Wittmer v. Peters, 87 F.3d 916 (7th Cir. 1996) ........................................................................... 4

## RULES

Fed. R. Civ. Pro. 56 .................................................................................................................... 1

Fed. R. Civ. Pro. 56(e) ................................................................................................................ 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TECHNIP OFFSHORE, INC. (as | § | |
| Substituted for TECHNIP OFFSHORE | § | |
| CONTRACTORS, INC., f/k/a COFLEXIP | § | |
| STENA OFFSHORE, INC.), | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. H 04 0096** |
| vs. | § | |
| | § | |
| WILLIAM FIELD SERVICES-GULF | § | |
| COAST COMPANY, L.P. AND | § | |
| WILLIAMS OIL GATHERING, LLC, | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and subsection 6 of the Court's Local Rules and Procedures, Defendants, Williams Field Services – Gulf Coast Company, L.P. and Williams Oil Gathering, L.L.C. (collectively, "Williams"), respectfully submit the following Reply in Support of Their Cross-motion for Partial Summary Judgment, and request that the Court grant Williams' Cross-motion for Partial Summary Judgment relating to Williams' breach of contract claim for liquidated damages.

**I.**
**NATURE AND STAGE OF THE PROCEEDINGS**

Williams and Technip Offshore, Inc. (as substituted for Technip Offshore Contractors, Inc. f/k/a Coflexip Stena Offshore, Inc.) ("Technip") entered into an August 13, 2001 Engineering, Procurement, Installation, and Commissioning of Gas Export Pipeline and Oil Export Pipeline Contract (the "Contract"), pursuant to which, Technip agreed to design and install, inter alia, a gas and an oil pipeline in the United States Gulf of Mexico. Technip filed suit against Williams, asserting several claims for breach of the Contract. See Plaintiff's Fourth

Amended Original Complaint. In response, Williams has asserted a counterclaim against Technip for breach of the Contract's liquidated damages provision, Article 23.5.1. <u>See</u> Defendants' Fourth Amended Answer and Complaint.

On May 16, 2005, Technip filed a Second Motion for Partial Summary Judgment, requesting that the Court grant it judgment on Williams' claim for liquidated damages ("Technip's Motion"). On June 6, 2005, Williams filed a Response to Technip's Motion ("Williams' Response") and a Cross-motion for Partial Summary Judgment ("Williams' Cross-motion"), requesting that the Court deny Technip's Motion and instead grant Williams summary judgment on its counterclaim for liquidated damages in the amount of $4,000,000, since there are no disputed facts relating to the enforcement of the liquidated damages provision in the Contract. Technip submitted its Reply on June 23, 2005, and its Response to Williams' Cross-motion on July 5, 2005.

## II.
## STATEMENT OF THE ISSUES

Whether Williams' Cross-motion for Partial Summary Judgment should be granted because Technip did not achieve Substantial Completion within fifty-one (51) days of the SPAR Access Date and because the date upon which it did achieve Substantial Completion is undisputed.

## III.
## ARGUMENT AND AUTHORITIES

### A.      The Affidavit of Guy Suffridge is Proper Summary Judgment Evidence

Technip objects to the following statement in the affidavit of Guy Suffridge on the basis that it amounts to a legal conclusion: "In accordance with Article 2.6 of the Contract, Williams set the SPAR Access Date for January 27." <u>See</u> Affidavit of Guy Suffridge at ¶ 4, attached to Williams' Response and Cross-motion as Exhibit "A". Notwithstanding Technip's argument,

this statement does not contain a legal conclusion, but, instead, a factual statement made by a person with knowledge regarding the date on which Williams set the SPAR Access Date and the provision Williams relied upon in setting it (Article 2.6 of the Contract). For example, in Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978), cited by Technip, the Fifth Circuit was concerned with statements made in support of a summary judgment motion that merely tracked the language of the Fair Labor Standards Act. Here, however, Mr. Suffridge is not tracking the language of a statute, case law or even the Contract, but is instead making a statement based on his personal knowledge that Williams notified Technip: (1) that the date on which it would have full access to the SPAR would be January 22, 2004; (2) that had Technip wanted full access to the SPAR on January 22, it would have been provided such access; and (3) that because Williams was able to utilize the SPAR between January 22 and January 27 (even though full access would been provided to Technip had it wanted it), Williams is only invoking the liquidated damages provision beginning on January 27. These statements are all factual in nature and do not, in any way, constitute legal conclusions.

Technip next objects to Mr. Suffridge's statement, claiming that it is contrary to the plain language in Article 2.6, because Article 2.4 contains the sole mechanism for setting the SPAR Access Date. Of course, the Court has already determined what the plain language of Article 2.6 means. Specifically, in its March 21, 2005 Memorandum and Opinion, the Court found that "Article 2.6 contemplates the issuance of a SPAR Access Date later than March 15, 2003. Article 2.6 begins with the words, 'notwithstanding the foregoing,' and does not address any diminishing window notice obligation if the ending date of the window is extended." See Memorandum and Opinion, 22 n.7. Thus, the plain language of the Contract allowed Williams to set the SPAR Access Date later than March 15, 2003, notwithstanding Article 2.4's

diminishing window mechanism, and Mr. Suffridge's statements do not conflict with the language of the Contract.

**B.**     **Williams Objects to Technip's Expert Report as Summary Judgment Evidence**

Technip attempts to rely on the unsworn report of Mr. Bryan Byrd, attached to Technip's Response, asserting that the report "establishes that Williams interpretation is not applicable as a matter of law." However, unsworn statements, including expert reports, are not competent, admissible summary judgment evidence because they do not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 515 (5th Cir. 2001) (holding that an unsworn statement was not competent summary judgment evidence because it did not meet the requirements of Rule 56(e)); see also Wittmer v. Peters, 87 F.3d 916, 917 (7th Cir. 1996) (stating that unsworn expert reports were not admissible under Rule 56(e) to support or oppose summary judgment); Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989) (finding that an expert's report attached to the declaration of plaintiff's counsel did not comply with Rule 56(e), since "[t]he substance of th[e] report was not sworn to by the alleged expert."). Thus, Mr. Byrd's report is improper, inadmissible summary judgment evidence.

Even if Mr. Byrd's unsworn report were admissible summary judgment evidence, Technip's use of Mr. Byrd's expert report here is improper.[1] Technip asserts that Mr. Byrd's report establishes that Williams' interpretation of the Contract is entirely unreasonable "as a matter of law." Of course, it is the Court's role to determine the law, not Technip's expert. See Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1096 n.5 (5th Cir. 1995) (stating that the

---

[1] Technip has failed to sufficiently establish Mr. Byrd's qualifications as an expert in legal contract interpretation and construction.

interpretation of a contract is a question of law for the court, not an expert witness); Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) (finding that Federal Rule of Evidence 704 does not allow experts to offer conclusions of law).

Further, extrinsic evidence is only admissible for the purpose of determining the parties' intent and then only if the contract's plain language is ambiguous. See Lenape Resources Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996). Such is not the case here where, as set forth above, the Court has already ruled that the provisions of Article 2.0 are unambiguous and that Williams could set the SPAR Access Date outside the Article 2.4 window (the "Window").[2] See Memorandum and Opinion, 19-20. The provisions regarding liquidated damages are equally unambiguous, and provide that:

> Should CONTRACTOR fail to achieve Substantial Completion of the Work by the later of either 02 March 2003 or the SPAR Access Date plus fifty-one (51) days, the COMPANY may assess as liquidated damages (LD), but not as a penalty, an amount of money per day equal to the LD value calculated in accordance with the mechanism below, for every day that the Work is not completed . . . ."

Article 23.5.1. Nothing in Article 23.5.1 is unclear, and Technip does not argue that it is unclear. Rather, the language unambiguously provides that once Technip was provided access to the SPAR, the liquidated damages provision was invoked. Thus, consideration of Mr. Byrd's report is unnecessary.

---

[2] As is clear from the plain language of the Contract, the ONLY purpose of the countdown mechanism was to allow Williams to insist on the use of the Deep Blue, not to allow Technip to invalidate the liquidated damages provision and to hold Williams hostage until it agreed to a new countdown mechanism. See Article 2.6 (providing for Technip to obtain another vessel if the SPAR Access Date was beyond the window identified in Article 2.4). This plain language interpretation is further evidenced by the fact that the portion of the work to occur after the SPAR Access Date was discreet (lifting up the steel centenary risers and connecting them) and was only four percent (4%) of the Contract's total value. See Section 4.8.2 of Exhibit "B" to the Contract; Exhibit "A" to the Contract (providing that the Contract sum for the SCR Hook-up Operations was $1,959,534).

**C.** **Williams Complied With Article 2.4, and Article 2.4 Is Not a Condition Precedent to the Recovery of Liquidated Damages Under Article 23.5.1**

Technip continues to argue that Williams failed to comply with Article 2.4 when the Court has already determined that the Contract contemplated the very scenario that occurred -- that Williams would set the SPAR Access Date outside the Article 2.4 Window.[3]  Moreover, Technip admits facts that establish that Williams did comply with the countdown mechanism to the extent necessary to avoid any breach under the Contract.  Specifically, Technip admits that Williams followed the countdown mechanism by providing notices on January 1, 2002 and August 14, 2002.  See Technip's Motion, at 6 Table 1.  Then, on October 25, 2002, the next date on which Williams could narrow the window, Williams specifically notified Technip that the SPAR Access Date would fall outside the window, thus forfeiting its right to insist on the use of the Deep Blue.  See id.  As the Court stated in its Memorandum and Opinion, neither Article 2.4 nor Article 2.6 obligates Williams to provide diminishing window notices once the SPAR Access Date is moved beyond March 15, 2003.  See Memorandum and Opinion, 22 n.7 (the Court further noted, "Technip has not pointed to Contract language that would require Williams to issue diminishing window notices following the structure of Article 2.4 if the window is extended past March 15, 2003, as Article 2.6 contemplates could occur.")  As admitted by Technip, the window was extended beyond March 15, 2003, on October 25, 2002.[4]  Thus, Williams did comply with Article 2.4 in that it provided notices to Technip until the SPAR Access Date moved beyond March 15, 2003.  Therefore, even if the countdown mechanism were a condition precedent to Williams' recovery of liquidated damages, it was met here.

---

[3] The Court found that to the extent Technip could prove that its damages resulted from a failure by Williams to follow the countdown mechanism in Article 2.4, as opposed to a delay in the SPAR Access Date, it could pursue those damages.  See Memorandum and Opinion, 24.  The Court did not find any breach by Williams.

[4] As a result, if Technip can establish that it incurred damages, prior to October 25, as a result of planning for the SPAR Access Date to be within the original window, then those damages might be recoverable.

Nevertheless, Technip has not explained how the countdown mechanism is a condition precedent to the enforcement of the liquidated damages provision in Article 23.5.1, and there is nothing in the Contract to evidence that it is a condition precedent. A condition precedent is an act that must occur subsequent to the making of a contract and before there is a right to immediate performance. Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). Further, in order for a performance to be specifically conditional, a term such as "if," "provided that," "on condition that," or some similar language that conditions performance normally must be included. Id. While Texas courts have recognized that such language is not required, the absence of it is probative of the parties' intent that a promise is made, rather than a condition imposed. Id.

Here, the Contract does not contain specific language conditioning the enforcement of Article 23.5.1 on Williams' compliance with the countdown mechanism in Article 2.4. In fact, neither article mentions the other. Moreover, the liquidated damages provision in Article 23.5.1 runs from the SPAR Access Date, not from the countdown mechanism. Any alleged breach by Williams of Article 2.4's countdown mechanism was not, as the Court has already found, related to the SPAR Access Date. Thus, the alleged obligation on Williams to follow the countdown mechanism was not a condition precedent to the enforcement of the liquidated damages provision.

**D.      Williams Properly Set the SPAR Access Date Pursuant to the Contract**

As further discussed in Williams' Response and Cross-motion and in the Court's Memorandum and Opinion, Article 2.6 allowed Williams to set the SPAR Access Date outside of the notification window. See Williams' Response and Cross-motion, 6-9; Memorandum and Opinion, 19-20. Nonetheless, Technip incorrectly argues that Article 2.6 contains no mechanism for setting the SPAR Access Date and that it only addresses the damages to which Williams

would be liable if access to the SPAR occurs outside the Article 2.4 Window. Article 2.6 does two things: (1) it identifies a factual scenario; and (2) it provides for the sole manner in which the parties will deal with that scenario if it occurs. Specifically, Article 2.6 states that <u>if</u> the SPAR Access Date falls outside the November 15, 2002 and March 15, 2003 Window and the Deep Blue is working for another customer, <u>then</u> Technip shall obtain another vessel to complete the work and shall be reimbursed by Williams for alternate vessel costs that exceed $275,000 per day. Article 2.6 does not provide that if Williams fails to set the SPAR Access Date within the Window and through the use of the countdown mechanism, then Williams will be in breach. In fact, nothing in the Contract indicates that a delay in the SPAR Access Date beyond the Window constitutes a breach of the agreement at all. To the contrary, the Contract, and specifically Article 2.6, contemplates that Williams may set the SPAR Access Date outside the Window and that if it does so, then Technip may only recover alternate vessel costs and then, only if they exceed $275,000. <u>See</u> Memorandum and Opinion, 19 ("In Article 2.7, the Contract made clear that Technip was limited to the remedies of 2.4, 2.5 and 2.6 'for costs . . . which may result because of delays in the SPAR Access Date.'"). Moreover, the definition of the SPAR Access Date does not require that it be set by a specific mechanism or procedure. Instead, the SPAR Access Date is merely "[t]he date upon which the CONTRACTOR shall be provided full access to commence Work at the SPAR in accordance with the requirements of Articles 2.0." <u>See</u> Contract, 3. Again, the plain language of the Contract conflicts with Technip's argument.

Technip then attempts to ignore the plain language of the Contract yet again and argues that Williams' (and presumably the Court's) reliance on the "Notwithstanding . . ." language in Article 2.6 is incorrect. As the Court has recognized, the phrase "notwithstanding the foregoing" means just what it says, that what follows controls what preceded. <u>See</u> Memorandum and

Opinion, 19-20, 22 n.7. Technip, on the other hand, attempts to rewrite the article completely by inserting the phrase "in spite of" and adding the language "Williams' requirement to provide notices of diminishing windows in accordance with Article 2.4(a)-(g)." Such a rewrite is not authorized by Texas law. <u>See</u> <u>Tenneco Inc. v. Enterprise Products Co.</u>, 925 S.W.2d 640, 646 (Tex. 1996). Moreover, irrespective of Technip's rewrite, the obligations of the parties, as set forth by Article 2.6 remain the same. Even if Williams had failed to comply with the diminishing window mechanism, and assuming Williams were otherwise obligated to comply with this mechanism, Article 2.6 still provides the sole method in which the parties agreed to address that situation. It is Williams that is attempting to abide by the Contract in this respect, not Technip.

Technip next argues that if Williams were permitted to set the SPAR Access Date pursuant to Article 2.6, Article 2.4 would be rendered meaningless. This argument is, likewise, without merit. Article 2.6 does not give Williams the right to ignore the requirements of Article 2.4. Rather, Williams was required to follow Article 2.4 until it became clear that the SPAR Access Date was going to fall beyond the Window and only for so long as Williams wanted the right to insist on the use of the Deep Blue.[5] In fact, as set forth above and as Technip admits, Williams did follow the Article 2.4 diminishing window mechanism until it became obvious that the SPAR Access Date was going to fall beyond March 15, 2003, and at that point, Williams notified Technip that the SPAR Access Date would be beyond the Window. Simply because the factual scenario set forth in Article 2.4 did not occur does not mean that Article 2.4 is rendered meaningless.

---

[5] Additionally, Technip's argument that Williams could set the SPAR Access Date immediately after the Contract to 100 years, 1,000 years or even millions of years in the future is contrary to the language of the Contract itself. As is clear from the Contract language, Williams could not have set the SPAR Access Date until it could provide Technip with "full access to commence Work at the SPAR." <u>See</u> Contract, 3 (definition of "SPAR Access Date.").

In addition, Articles 2.4 and 2.6 do not irreconcilably conflict. Both Articles 2.4 and 2.6 have their place in the Contract – Article 2.4 was to apply if the SPAR Access Date fell inside the Window, and Article 2.6 was to apply if the SPAR Access Date fell beyond the Window.

Technip also asserts that Williams' position is inconsistent with its communications and conduct during the Project. First, Technip argues that because the December 31, 2003 letter in which Williams set the SPAR Access Date did not reference Article 2.6, Williams must not have believed, during the Project, that Article 2.6 granted it the right to set the SPAR Access Date beyond the Window. In addition to the fact that this argument goes well beyond any interpretation of the plain meaning of the Contract, it is also contrary to the undisputed evidence. As Technip admits in its Motion, after August 2002, Williams no longer provided Article 2.4 diminishing window notifications, evidencing Williams' belief that it no longer needed to do so since the SPAR Access Date was to be outside the Window. As discussed in Williams' Response and Cross-motion and in correspondence from Tim Oberlender, which is attached to Technip's Motion as Exhibits "A-5" and "A-7", Williams expressly recognized that the parties contemplated the SPAR Access Date being outside the Window and that Article 2.6 addressed this circumstance. See Williams' Response and Cross-motion, 9-10. Specifically, Mr. Oberlender's letter states as follows: "The circumstance of the Spar Access Date being outside the original window was specifically contemplated by the parties during formation of the Contract, and intentionally addressed Article 2.6 and further confirmed in Article 2.7 which set forth the negotiated limitations on [Technip's] remedies therefore." See April 8, 2003 correspondence from Mr. Oberlender to Technip, attached to Technip's Motion as Exhibit "A-7".

Technip's argument that a change order was required to alter the Contract's "Work

Schedule" is also unpersuasive.  Williams does not deny that the Contract provided for a change order process, but a change order was not needed in this situation because the situation was contemplated in the Contract and did not result in any change in work.  Article 2.6 of the Contract addresses the situation of the SPAR Access Date falling beyond the Window, and it does not require an alteration of the Contract's "Work Schedule" or a change order.  Technip relies on the fact that the definition of "Work Schedule" references Article 2.5 and that Article 2.5 refers to the SPAR Access Date as determined in accordance with Article 2.4.  However, Technip again ignores the language in Article 2.6 "Notwithstanding the foregoing," which also means notwithstanding the provisions in Article 2.5.  Moreover, as discussed in Williams' Response and Cross-motion, the fact that Williams suggested a new countdown mechanism (if the parties could agree to one subject to Article 2.6) evidences Williams' belief that the mechanism in Article 2.4 no longer applied and that if the parties wanted to institute a new mechanism, a change order would be needed.  See Correspondence from T. Oberlender, attached to Technip's Motion as Exhibits "A-5" and "A-7";  Williams' Response and Cross-motion, 10-11.  Of course, had a new mechanism been established, then Williams would have, once again, been able to insist on the use of the Deep Blue.  Williams, however, never agreed to a new mechanism.

**E.**     **Williams is not Precluded from Recovering Damages Simply Because Technip Alleges it Breached the Contract**

Technip argues that Williams is precluded from collecting damages since Williams may have breached the Contract – specifically, that Williams failed to follow Article 2.4's countdown mechanism.  Technip argues that it may recover damages to the extent that those damages flow from Williams' failure to follow the countdown mechanism.  First, as discussed above, Williams did not breach the Contract.  Further, the Court did not find in its Opinion that Williams was

required to follow the countdown mechanism. To the contrary, the Court noted twice that Technip has not identified any provision in the Contract that required Williams to follow the diminishing window mechanism in Article 2.4 if the SPAR Access Date was beyond March 25, 2003, as was the case. <u>See</u> Memorandum and Opinion, 22 n.7, 23 n.8.

Second, even if Williams' failure to follow Article 2.4 were a breach of the Contract, such breach was not material and did not discharge or excuse Technip from its obligations under the Contract. <u>See</u> <u>Mustang Pipeline Co. v. Driver Pipeline Co.</u>, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.") (citations omitted). Technip has not even asserted that Williams' alleged breach of the countdown notification mechanism in Article 2.4 was a material breach that resulted in a termination of the Contract. Rather, Technip continued to perform under the Contract and even now seeks to enforce it, as is evident from its five claims in the Fourth Amended Original Complaint; thus, Williams is not precluded from recovering damages for Technip's breach. <u>See</u> <u>Castle Texas Production Ltd. Partnership v. Long Trusts</u>, 134 S.W.3d 267, 280 (Tex. App.—Tyler 2003, pet. denied) (finding that even though the plaintiffs may have breached the contract, they were not precluded from recovering damages for a subsequent breach by the defendants because the defendants treated the contract as continuing). <u>See also</u> <u>Gupta v. Eastern Idaho Tumor Inst., Inc.</u>, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("If the non-breaching party elects to treat the contract as continuing and insists the party in default continue performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties.").

Finally, Technip claims that if Williams failed to comply with Article 2.4, it failed to

perform conditions precedent to the recovery of liquidated damages. However, as discussed above, the alleged obligation to follow the countdown mechanism was not a condition precedent to the enforcement of the liquidated damages provision. See § III(C), supra.

**F.    Technip Has Waived the Argument that the Liquidated Damages Provision in the Contract is an Unenforceable Penalty**

Technip cannot now claim that it needs additional discovery on whether the liquidated damages clause is an unenforceable penalty and that there is a fact issue as to such defense that precludes summary judgment, because Technip has waived its argument that the liquidated damages provision in the Contract is an unenforceable penalty. The argument that a liquidated damages provision is unenforceable because it is a penalty is an affirmative defense to Williams' claim for damages under the clause. Pace Communications, Inc. v. Moonlight Design, Inc., 31 F.3d 587, 594 (7th Cir. 1994); Phillips v. Phillips, 820 S.W.2d 785, 789 (Tex. 1991). More importantly here, a party's failure to raise an affirmative defense in its responsive pleadings constitutes a waiver of that defense. Funding Systems Leasing Corp. v. Pugh, 530 F.2d 91, 96 (5th Cir. 1976). Technip has not pled the affirmative defense of penalty in any of its four responsive pleadings to Williams' counterclaim for liquidated damages and now raises it for the first time in its response to Williams' motion for partial summary judgment. Thus, Technip has waived this defense. Den Norske Stats Oljeselskap, A.S. v. Hydrocarbon Processing, Inc., 992 F. Supp. 913, 915 (S.D. Tex. 1998) (holding that a party may not assert an affirmative defense in its response to a motion for summary judgment that it had not first asserted in its original answer and that it did not seek leave to add until seven months after filing its original answer).

**G.    Technip is Not Entitled to Additional Time To Conduct Discovery As To The Enforceability Of Article 23.5.1, Because There Are No Factual Issues And Technip Has Waived Any Such Request**

As set forth in Williams' Response and Cross-motion, the following factual issues are

undisputed and relate to the enforceability of Article 23.5.1:

> 1. On December 31, 2003, Williams informed Technip that the SPAR Access Date was January 22, 2004. See Ex. "A", Affidavit of Guy S. Suffridge at ¶ 5; Technip's Second Motion for Partial Summary Judgment at 6, 18 and Exhibit A-9.

> 2. Williams subsequently set the SPAR Access Date for January 27, 2004. See Ex. "A", Affidavit of Guy S. Suffridge at ¶ 5; Technip's Second Motion for Partial Summary Judgment at 7 n.4.

> 3. Substantial Completion occurred on April 22, 2004. See Ex. "A", Affidavit of Guy S. Suffridge at ¶ 4; Technip's Second Motion for Partial Summary Judgment at 7.

See Williams Response and Cross-motion, 11-12. These facts are sufficient to allow the Court to grant Williams summary judgment on its liquidated damages claim.

Even if Technip had not waived its affirmative defense that the liquidated damages clause is an unenforceable penalty, as discussed above, Technip is not entitled to additional discovery on the issue. Technip has never propounded any discovery specific to this issue. Yet, Technip asserts that it has requested documents concerning a financial analysis of the Devils Tower Project, which somehow relates to its "penalty" affirmative defense, and that Williams withheld responsive documents based on confidentiality concerns. Technip's argument is disingenuous at best, and borders on being deliberately misleading. Williams agreed to produce its confidential documents subject to an agreed protective order, which the parties began negotiating in June and July of 2004. See Affidavit of Karissa K. Cottom at ¶ 3, attached hereto as Exhibit "A". Counsel for Williams finalized the protective order in October 2004, and provided it to Technip's counsel for signature on or about October 25, 2004. See id. At this point, Williams was prepared, at any time, to make all of its confidential documents available to Technip. See id. However, Williams' counsel did not hear from Technip's counsel again, either regarding the review of Williams' documents or regarding the status of the protective order, until June 2, 2005.

See id. The protective order was filed with the Court on June 3, 2005. Thereafter, Williams made its documents available to Technip on the date chosen by Technip, without any constraints. See June 2005, Email correspondence between Jeff Shaw and John F. Kasper, attached hereto as Exhibit "B". Therefore, it was Technip's fault that it was prevented from reviewing Williams' confidential documents until now, and Technip should be prevented from using its own delay as a reason to seek additional time for discovery on Williams' counterclaim.[6] Moreover, Technip has failed to respond to Williams' requests to schedule depositions. See June 16, 2005 correspondence from T. Lane Wilson to Kerry C. Williams, attached hereto as Exhibit "C". It is not Williams that has delayed discovery in this matter.

## H. Williams has Established as a Matter of Law that it is Entitled to $4 Million in Liquidated Damages

Relying on the affidavit of Paul Thomson, Technip argues that Williams has provided no competing summary judgment evidence to counter Mr. Thomson's testimony that Williams' alleged breach prevented Technip's timely performance of the Contract. However, Technip ignores Mr. Suffridge's affidavit, which states:

> Williams initially provided the date of January 22, 2004, as the SPAR Access Date. A true and correct copy of the letter by which Williams set this date is attached to Technip's Second Motion for Partial Summary Judgment as Exhibit A-9. Had Technip been ready to begin its work on the SPAR on January 22, 2004, full access would have been provided to Technip. However, since other work was being performed on the SPAR until January 27, 2004, it is that date from which Williams has calculated its liquidated damages.

Affidavit of Guy Suffridge at ¶ 5, attached to Williams' Response and Cross-motion as Exhibit "A" (emphasis added). Mr. Suffridge's sworn statement specifically disputes Mr. Thomson's

---

[6] Moreover, it was only after Williams filed its Cross-motion that Technip now insists that such motion is premature.

assertion that Williams did not give Technip access to the SPAR to commence performance of its work.

Additionally, Technip's assertion that Williams' prevented Technip's timely performance of the Contract by not providing the pull-in winches at the SPAR is contrary to the express terms of the Contract. Section 4.3.3 of Exhibit "B" to the Contract specifies that Technip, not Williams, was to supply the pull-in winches.

Technip also argues that a fact issue exists concerning the trigger date for the 51-day performance obligation in the liquidated damages provision, because Williams has provided no evidence that it complied with its obligation to have the SPAR ready for Technip to perform its SPAR Installation operations. Again, Technip ignores Mr. Suffridge's sworn testimony that Williams would have provided Technip with full access to the SPAR on January 22, 2004 had Technip been ready to perform its work. See id. It is Technip's burden to come forward with evidence that such access was not provided. Mr. Thompson's conclusory allegations are not sufficient. Moreover, Mr. Thompson's affidavit does not raise a fact issue concerning which date applies for purposes of triggering the 51-day performance obligation, because as discussed above, Williams properly set this date – the SPAR Access Date – pursuant to Article 2.6 of the Contract.

Technip argues that a fact issue exists as to whether the liquidated damages provision was a reasonable forecast of Williams' actual damages. As discussed above, Technip has failed to plead the affirmative defense of penalty until now and has, thus, waived such defense to the enforcement of the liquidated damages provision. See § III(F), supra.

Finally, Technip asserts that the Court may deem the Contract ambiguous if the Court deems both parties' Contract interpretations to be reasonable alternatives. There is no ambiguity

in the liquidated damages provision.  See § III(B), supra.

## IV.
## CONCLUSION

Based upon the foregoing, Williams respectfully requests that the Court grant Williams'

Cross-motion for Partial Summary Judgment on Williams breach of contract claim for liquidated

damages.

Respectfully submitted,

s/ T. Lane Wilson
_____
T. Lane Wilson
Southern District of Texas No. 38867
HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, OK  74103-3708
Telephone (918) 594-0400
Facsimile (918) 594-0505

ATTORNEY IN CHARGE FOR
DEFENDANTS WILLIAMS FIELD
SERVICES - GULF COAST COMPANY,
L.P. AND WILLIAMS OIL GATHERING,
LLC

Of Counsel:
HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.
Karissa K. Cottom
State Bar No. 24029893
Southern District of Texas No. 29593

and

JONES, WALKER WAECHTER
POITEVENT, CARRERE &
DENEGRE, L.L.P.
John D. White
State Bar No. 21311500
Southern District of Texas No. 6579
Catherine V. Funkhouser
State Bar No. 24037307
Southern District of Texas No. 38779
10001 Woodloch Forest Drive, Suite 350
The Woodlands, Texas 77380
Telephone (281) 296-4444
Facsimile (281) 296-4404

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2005, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Randall Kyle Hawes    kyle.hawes@chamberlainlaw.com

Steven Jon Knight   steven.knight@chamberlainlaw.com

I hereby certify that on July 14, 2005, I served the foregoing document by U.S. certified mail, postage prepaid, return receipt requested, on the following, who are not registered participants of the ECF System:

Kerry C. Williams
Josh Bowlin
Chamberlain, Hrdlicka, White,
Williams & Martin
1200 Smith St., Ste. 1400
Houston, TX  77002

s/ T. Lane Wilson
_____

547512.2:912455:00370